<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYNU CLARK and JASON GERGLER,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE HONORABLE CARLOS DEL TORO, in his official capacity as the Secretary of the Navy,<br><br>and<br><br>THE UNITED STATES OF AMERICA,<br><br>*Defendants*. | Civil No.: 22-cv-2586 (KSH) (ESK)<br><br><br><br><u>OPINION</u> |

**Katharine S. Hayden, U.S.D.J.**

I.  **Introduction**

Plaintiffs Raynu Clark and Jason R. Gergler (together, "plaintiffs") have filed this wrongful death action against the United States and Carlos Del Toro, the Secretary of the Navy, under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401, 2671-80, based on the July 2019 death of their son, Tyler M. Gergler,[1] while he was driving to a U.S. Marine Corps recruiting event.  Defendants have moved to dismiss for lack of subject matter jurisdiction, failure to state a claim, and improper venue.  (D.E. 6.)  For the reasons set forth below, the action will be dismissed for lack of subject matter jurisdiction based on the discretionary function exception to the FTCA.

---

[1] The Court refers to Tyler M. Gergler as "Tyler" throughout this opinion by way of distinction from plaintiff Jason R. Gergler.

1

**II.     Background**

The complaint alleges as follows. Tyler was raised in a family with a long history of service in the United States Marine Corps. Both parents and his maternal grandfather were Marines. (D.E. 1, Compl. ¶¶ 17, 56.) In June 2019, shortly after graduating from high school, Tyler enlisted in the Marine Corps Reserve for eight years with a four-year active-duty obligation. (*Id.* ¶ 19.) He joined through the delayed entry program ("DEP"). (*Id.* ¶ 21.) The parties describe the DEP in roughly similar terms: defendants characterize it as a program permitting individuals to "enlist in a Reserve component of a military Service and specify a future reporting date for entry on active duty in the active component that would coincide with availability of training spaces." (D.E. 6-1, Defs.' Moving Br. 3 (citing D.E. 6-2, Kayser Decl., Ex. 1, Marine Corps Order 3040.4, Marine Corps Casualty Assistance Program § 1-4, ¶ 2.t (defining DEP).) Plaintiffs describe it as "a military entry program in which individuals enlist in the United States Marine Corps but are not required to report for training and active duty for up to a year." "[R]ecruits or 'poolees' are untrained members of the non-drilling Reserve component of the military" who "show up on an assigned date at the Military Entrance Processing Station ('MEPS'), at which time, the poolee is discharged from the Reserves and re-enlisted in the active branch of the military chosen." (D.E. 9, Pls.' Opp. Br. 2.)[2]

---

[2] *See also* Marines, Delayed Entry Program, https://www.marines.com/become-a-marine/process-to-join/delayed-entry-program.html (last visited March 31, 2023) ("In addition to getting you ready for recruit training, the DEP grants you the opportunity to postpone recruit training . . . to complete [school] . . . or generally get your affairs in order before setting out on this life-changing, purposeful endeavor. . . . Your Marine Recruiter will provide you with mentorship, guidance and support, while ensuring you are prepared for the rigors of recruit training. You will participate in a strenuous physical regimen, to prepare you and your fellow poolees for the recruit training battles ahead. . . . You will attend family nights with your family and other members of the Delayed Entry Program."); *id.* ("It is at Marine Corps Recruit Training where it will be determined who is driven by a refusal to quit and an uncompromising will to

According to the complaint, in late July 2019, at the behest of Marine Corps Staff Sergeant Mitchell Castner, his recruiter, Tyler prepared to attend a Marine Corps recruiting event in Colts Neck, New Jersey, on July 27, 2019. On July 26th, Castner and Tyler, who lived with his father in Maryland, exchanged text messages. (Compl. ¶¶ 1-2, 16-17, 23.) Castner, texting from Hackensack, New Jersey, told Tyler, in Maryland, to attend, despite Tyler's statements that he was vomiting, dizzy, and lightheaded from a stomach virus and migraine headache. (*Id.* ¶¶ 24-26, 58.) Castner texted Tyler that "you at least need to show because they're making a big deal about people not showing," and Tyler replied back, "I'm trying to get it out of me." (*Id.* ¶ 26.) Castner responded, "Do your best man," leading to the following exchange:

> [Tyler]: Give me an hour I'll see if I can get someone to drive me because I can't drive it's not safe for me or anyone else on the road.
>
> [Tyler]: It's not looking good sir…I really am sorry to be getting sick like this I know this screws a ton of crap up but maybe I'll be able to make it by the 30th for meps?
>
> [Castner]: It ain't about meps man….this pool function and you not being there is the important. You need to be up here for the pool function. At least to show face.
>
> [Castner]: And thats coming from [Staff Sergeant Jeremy] [B]lassingame. Cause they're gonna talk about discharging you if you dont.
>
> [Tyler]: I guess I'm gonna try and drive then.

(*Id.* ¶ 26.) A phone call between Castner and Tyler ensued, after which Castner wrote, "Just let me know when you leave and when you get up here." (*Id.*) Tyler responded, "Yes, sir," and just under an hour and a half later, he texted Castner one word: "Leaving." (*Id.*)

Within 90 minutes after that exchange, Tyler died in a single-car crash on a Maryland highway. (*Id.* ¶¶ 27-28.) The Maryland state police reported that he did not brake before impact

---

win. To prepare you for these battles, the DEP will test your resolve and ensure you can work collectively with those who share in a common moral cause.").

with a guardrail, and that it did not appear he reacted to leaving the roadway. (*Id.* ¶¶ 31, 46.) He suffered catastrophic injuries and was pronounced dead at the scene. (*Id.* ¶¶ 38-41.) The road conditions and weather were clear, the road was straight and level, and Tyler had no drugs or alcohol in his system. (*Id.* ¶¶ 32-34, 36.) According to the complaint, Tyler "was most likely unconscious when the accident occurred," as he "made no attempt to [brake] prior to striking the guard rail and . . . no attempt to avoid the guard rail or steer the vehicle back into the road." (*Id.* ¶ 37.) It further asserts that due to his illness, Tyler "was in no condition to operate a vehicle" and should not have been driving, and Castner knew this when he "ordered Tyler to drive to New Jersey for the recruiting event or face discharge." (*Id.* ¶¶ 44-45, 48-49.)

The Marines declined to provide benefits because Tyler was not yet a Marine; the complaint describes the "official position" to be that Tyler did not qualify "because he was driving to stay with family in New Jersey that evening and would then drive to the Poolee [recruiting] event the next morning." (*Id.* ¶ 63.)

Plaintiffs submitted administrative tort claims to the Department of the Navy and to the United States in May and June 2021. (*Id.* ¶ 10.) The Department of the Navy issued a final rejection letter on March 9, 2022. (*Id.* ¶ 12.) Plaintiffs filed their complaint on May 2, 2022, asserting a negligence claim under the FTCA. The contents of text messages purportedly recovered from Tyler's cell phone were attached as an exhibit to the complaint, as were emails reflecting plaintiffs' efforts to seek death benefits from the Marines. (*See* D.E. 1-1, Ex. 1 to Compl.)

Defendants have moved to dismiss for lack of subject matter jurisdiction, invoking the discretionary function exception to the FTCA. They further assert that plaintiffs have failed to state a claim for negligence. Finally, they contend that even if subject matter jurisdiction exists

and even if plaintiffs have adequately pleaded a claim under Fed. R. Civ. P. 12(b)(6), venue is improper and the action should be dismissed or transferred to the District of Maryland. In support of their motion, defendants rely on briefing (D.E. 6-1, Moving Br.; D.E. 10, Reply Br.), as well as declarations from Castner (D.E. 6-3, Castner Decl.) and Marine Corps Captain Kevin P. Kayser, the Executive Officer of Recruiting Station New Jersey, 1st Marine Corps District (D.E. 6-2, Kayser Decl.). Kayser's declaration attaches as exhibits several Marine Corps orders that, in pertinent part, describe aspects of the DEP, a policy letter from the Marine Corps recruiting command, and what defendants assert is the hold harmless agreement that Tyler signed. Plaintiffs oppose on all grounds, relying on their opposition brief. (D.E. 9, Opp. Br.)

### III.   Legal Standards

#### A.  Rule 12(b)(1) Motions

Defendants have raised the threshold question of subject matter jurisdiction. Without it, "this Court is without power to hear the case," *Northlight Harbor, LLC v. United States*, 561 F. Supp. 2d 517, 521 (D.N.J. 2008) (Rodriguez, J.), and cannot reach the merits. Because that issue is dispositive here, the Court will not reach defendants' arguments under Rules 12(b)(3) or (6).

A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) may take the form of either a facial attack or a factual one. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). The distinction "determines how the pleading must be reviewed." *Id.* A facial attack "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present." *Id.* at 358. A defendant can

5

mount this kind of challenge before answering the complaint or "otherwise contest[ing] the factual allegations of the complaint." *Id.*

"A court ruling on a facial attack considers only the complaint, viewing it in the light most favorable to the plaintiff." *Long v. SEPTA*, 903 F.3d 312, 320 (3d Cir. 2018). In substance, the same standard that applies to a Rule 12(b)(6) motion applies to a facial attack on subject matter jurisdiction under Rule 12(b)(1): the Court is limited to the complaint allegations and a limited universe of additional materials (*e.g.*, documents referenced in and attached to the complaint) and construes those allegations in plaintiffs' favor. *Aichele*, 757 F.3d at 358; *see also Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) ("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

A factual attack argues that subject matter jurisdiction is lacking "because the facts of the case . . . do not support the asserted jurisdiction." *Id.* For example, although a plaintiff may have adequately *pleaded* diversity jurisdiction, a defendant mounting a factual attack could offer proof that, *in fact*, there is no diversity. *Id.* A court ruling on a factual attack affords no presumption of truthfulness to the complaint allegations; the burden of proving subject matter jurisdiction rests on the plaintiff; and the Court can make factual findings relative to jurisdiction and look outside the pleadings in doing so. *CNA v. United States*, 535 F.3d 132, 139, 145 (3d Cir. 2008) (citations omitted); *accord S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 332 (3d Cir. 2012).

### B. FTCA Framework and the Discretionary Function Exception

"The United States of America, as a sovereign, is immune from suit unless it consents to be sued." *Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008). The FTCA supplies a limited waiver of that immunity. *Pellegrino v. United States of Am. Transportation Sec. Admin.*, 937 F.3d 164, 169 (3d Cir. 2019) (en banc). More specifically, it waives the government's immunity for certain injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674; *CNA*, 535 F.3d at 138 (section 1346(b)(1) "allows plaintiffs to bring claims based on the action of [g]overnment employees when private persons engaging in analogous behavior would be liable under state law").

There are exceptions to the FTCA's waiver of the government's immunity; among them is the discretionary function exception, which provides that the FTCA does not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The discretionary function exception "'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.'" *Merando*, 517 F.3d at 164 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984)). Its purpose is "'to prevent judicial "second guessing" of legislative and administrative decisions grounded in social, economic, and political policy

7

through the medium of an action in tort.'" *Id.* (quoting *Varig Airlines*, 467 U.S. at 808). It is plaintiffs' burden to show that their claims fall within the scope of the FTCA (in other words, that the requirements of 28 U.S.C. § 1346(b)(1) are satisfied), but it is the government's burden to show that the discretionary function exception to the FTCA applies. *Id.*; *S.R.P. ex rel. Abunabba v. United States*, 767 F.3d 329, 333 (3d Cir. 2012).

In determining whether the discretionary function exception applies, it is essential to identify the specific conduct that is being challenged. *S.R.P.*, 767 F.3d at 332. Thereafter, the Court engages in a two-part inquiry, which involves asking first "whether the act giving rise to the alleged injury and thus the suit involves 'an element of judgment or choice.'" *Merando*, 517 F.3d at 164 (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). The "judgment or choice" requirement is not met if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." *Id.* (quoting *Gaubert*, 499 U.S. at 322) (internal quotation marks omitted)). The rationale is as follows:

> [I]f a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation. If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy. On the other hand, if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations.

*Id.* at 165 (quoting *Gaubert*, 499 U.S. at 324).

If the conduct does involve an element of judgment or choice, the Court next asks "'whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *Id.* (quoting *Gaubert*, 499 U.S. at 322-23). This inquiry carries forth the exception's

purpose – preventing judicial second-guessing of legislative and administrative policy decisions via tort actions – and thus aims to protect policy-based actions and decisions. The focus is on the nature of the action taken, and not on the actor's subjective intent in exercising discretion. *Id.*

## IV.   Discussion

It is not clear whether defendants' challenge to subject matter jurisdiction is intended to be a facial attack or a factual one. In some respects, they have signaled a factual attack by attempting to direct the Court to material outside the pleadings. Castner's declaration, for instance, offers an interpretation of the text messages that contrasts with plaintiffs' characterization of them in the complaint. (*Compare* Castner Decl. ¶¶ 4-5 (claiming he did not "order" Tyler to report and instead "informed [him] that participation in DEP functions was voluntary" and "encouraged" him to attend the July 27 function) *with* Compl. ¶ 23 (alleging that Castner "ordered" Tyler to attend).)[3] Defendants also invoke Castner's declaration to challenge plaintiffs' assertion in their brief that the recruiting event was a social event not involving physical training. (*Compare* Pls.' Opp Br. 2 *with* Reply Br. 2.) They further contend that the Court can consider the hold harmless agreement Tyler allegedly signed because the Court can consider evidence outside the pleadings in ruling on a Rule 12(b)(1) motion. (Moving Br. 23 n.8; Reply Br. 2 n.2) In other respects, however, defendants suggest that the materials they have submitted are appropriate for review on even a facial challenge. (*See* Moving Br. 12 (asserting that "even when a facial challenge to jurisdiction is brought, the Court may still consider public documents and websites").)

---

[3] Defendants' briefing also appears to attribute to Castner an additional series of text messages in which the sender offers to buy or make Tyler food. (Moving Br. 7; Reply Br. 4 (citing Compl., Ex. 1).) Those messages are found in the exhibit to the complaint. This appears to be misguided, given the time stamps and the sender's different phone number, but is ultimately irrelevant.

9

Notwithstanding the soft focus of defendants' legal analysis, the fact remains that the discretionary function inquiry has a narrow and very specific focus. That is the relevant conduct involved "an element of judgment or choice," and, if so, whether that judgment is the kind that exception aims to shield. As explained earlier, the first part of that test looks to whether a statute, regulation, or policy mandates certain conduct. If no such authority exists, the Court proceeds to the policy-based inquiry in the second step. Given that, defendants' efforts to pick factual fights ultimately are not material to the inquiry.[4]

Instead, what controls the inquiry is a limited number of uncontested factual allegations and the policy letter attached to Kayser's declaration. To be clear, the Court does not have to look outside the pleadings and materials appropriate to a facial challenge to subject matter jurisdiction in order to conclude that the discretionary function exception applies here. As such, labeling defendants' motion a factual attack or a facial attack is beside the point, because even with the additional procedural protections that a facial attack gives plaintiffs,[5] the Court is constrained to conclude that subject matter jurisdiction is lacking.

In their lawsuit, plaintiffs seek to prove that the government, through Castner, was negligent to the point of causing Tyler's death insofar as his text exchange compelled Tyler to

---

[4] For example, the government actor's characterization of his own words—words that, in any event, are reproduced verbatim in the complaint and its accompanying exhibit, and which Castner does not deny sending—is irrelevant to this analysis. *Merando*, 517 F.3d at 165 ("The 'focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by the statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.'" (quoting *Gaubert*, 499 U.S. at 325)).

[5] As explained earlier, these protections are a presumption of truth attaching to plaintiffs' factual allegations and limits on the scope of what the Court can consider. The Court also cannot make factual findings relative to jurisdiction. *See Aichele*, 757 F.3d at 358; *CNA*, 535 F.3d at 139, 145; *S.R.P.*, 676 F.3d at 332. The burden to prove the applicability of the discretionary function exception rests on defendants regardless of the type of challenge to subject matter jurisdiction. *See S.R.P.*, 676 F.3d at 344-45.

drive to a recruiting function while he was impaired by illness.[6] Notwithstanding that defendants *characterize* Castner's language differently, there is no dispute about the statements he actually made, and there is no dispute that the relevant conduct is Castner's choice of words in communicating with Tyler about attending the function.

The next question is whether that conduct "involves 'an element of judgment or choice,'" an inquiry that looks to whether a "federal statute, regulation, or policy *specifically prescribes* a course of action for an employee to follow." *Merando*, 517 F.3d at 164 (emphasis added). Defendants argue that "[t]here are no Marine Corps policies or orders mandating how the recruiter should have exercised his judgment in his treatment of [Tyler] under these circumstances." (Moving Br. 17.) They cite Marine Corps Recruiting Command Policy Letter 02-15, Exhibit 2 to the Kayser Declaration, on risk management for pool (and other) functions, a document plaintiffs do not challenge on any procedural grounds[7] and which the Court may review. *Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017).

A careful reading convinces the Court that its guiding principle is common sense. The text relates the purpose of the DEP—"to prepare poolees and candidates for the physical and mental rigors of recruit training and Officer Candidates School (OCS) in order to reduce attrition"—and cites the importance of "exercising common sense," or the "'sound practical

---

[6] Although the complaint asserts that Staff Sergeant Jeremy Blassingame also engaged in "actions . . . [that] provide clear liability for the government" (Compl. ¶ 22) plaintiffs offer no factual allegations regarding the conduct they purport to attribute to him. Instead, his name appears in a text message Castner sent to Tyler.

[7] Although plaintiffs argue that the Court should not consider the unsigned hold harmless agreement appended to this document in the context of defendants' Rule 12(b)(6) argument, they do not suggest that the Court cannot consider the policy letter itself. Moreover, the hold harmless agreement (whether the signed version or unsigned version) is irrelevant to the Court's resolution of this matter under Rule 12(b)(1).

judgment that is independent of specialized knowledge, training, or the like,'" when planning and carrying out events. (*Id.* at 1-2.) It directs commanding officers to "implement specific control measures to mitigate risk," for physical activities. (*Id.* at 2.) It lists steps to take such as designating a Marine in charge, telling civilian personnel that participation is voluntary and what the scope of the event is, having means of communication (such as charged cell phones with sufficient signal strength) available, and mitigating risks from the terrain and weather. There are no specifics on how to communicate with recruits or how hard to push them to attend specified events.

In short, Marine Corps Recruiting Command Policy Letter 02-15 is not a mandatory directive to Marine recruiters to communicate with recruits under the circumstances confronting Tyler and Castner, nor does it impose specific requirements about how to motivate poolees to attend events. Implicitly those matters are left to recruiters' discretion. Plaintiffs point to no other sources for any requirements imposed, and they do not contend that discovery is needed for them to establish that such a requirement exists.

Absent such a mandate, the second step of the analysis examines whether the decision defendants made—specifically, the judgment Castner exercised in strongly exhorting Tyler to attend the event—is the type of judgment the exception aims to shield. When "established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion," a rebuttable presumption arises that the agent's acts when exercising that discretion are grounded in policy considerations. *S.R.P.*, 676 F.3d at 336 (quoting *Gaubert*, 499 U.S. at 324) (internal quotation marks omitted).

Plaintiffs have not rebutted that presumption here, but even in the absence of any presumption at all, it is apparent that the judgment Castner exercised here is of a type susceptible

12

to policy analysis. To satisfy that requirement, "there must be a 'rational nexus' between the Government's decision and 'social, economic, and political concerns.'" *Id.* (quoting *Cestonaro v. United States*, 211 F.3d 749, 759 (3d Cir. 2000)). Defendants point to the need for military personnel to ensure recruits' readiness through a mix of considerations – physical and mental – to embark on service with the Marine Corps, and to the necessity of considering tradeoffs between safety and preparedness in the process. (*See* Moving Br. 15-18; Reply Br. 1.)

Plaintiffs argue that attendance at a social event has nothing to do with combat readiness, proper resource allocation, or preparation for boot camp, and contend that the case law dismissing similar claims by poolees involved physical training, not social gatherings. Preparedness for military training and service inescapably does involve social considerations, and courts have so recognized. In *Snow v. United States*, the court wrote that discretionary decisions satisfying the second prong of the discretionary function analysis can involve balancing "technical, military, *and even social considerations*, including specifically the tradeoff between greater safety and greater combat effectiveness." 2012 WL 1150770, at *3 (E.D. Tax. Mar. 13, 2012) (emphasis added), *report and recommendation adopted*, 2012 WL 1150765 (E.D. Tex. Apr. 5, 2012). *See also Hajdusek v. United States*, 2017 WL 4250510, at *6-7 (D.N.H. Sept. 21, 2017) (same, and noting need for balancing poolee safety concerns against interest in preparing poolees for physical and mental rigors of training and service), *aff'd*, 895 F.3d 146 (1st Cir. 2018); *James v. United States*, 2013 WL 12086793, at *3, 4 (C.D. Cal. July 24, 2013) (United States had "demonstrated that the discretionary function exception applies to judgments made by the USMC in training its personnel and conducting recruiting events"; "[d]efendants' decisions as to how to train its military personnel and conduct recruiting events" are based on public policy and their "determinations as to how best to recruit and train new Marines . . . are

13

precisely the type of judgments the . . . exception is designed to protect"). As the First Circuit said, albeit in a physical training case but in language that illustrates the broad considerations in play:

> Work the poolees too much, and the Corps loses potential new members; work them too little, and preparedness and discipline might suffer. We doubt that Congress intended judges to dictate this balance, especially given that judges would only be reviewing claims of error in one direction.

*Hajdusek*, 895 F.3d at 151. Castner's exhortations to Tyler to, among other statements, "at least" show up and "show face" fit readily within this policy-based rubric; he was urging Tyler to show readiness and resolve to be a Marine by showing up.

Plaintiffs, appearing to recognize the constraints of the discretionary function exception as applied here, suggest that Castner's behavior was so objectively unreasonable that it should not be shielded. This "objectively unreasonable" language comes from *Hajdusek*, where the panel addressed a concern that dismissing that case would give the military "a license to behave unreasonably in its interactions" with poolees who have no access to care or other benefits if injured. 895 F.3d at 152. The panel suggested that a hypothetical situation might exist in which certain decisions may "pass a threshold of objective unreasonableness such that no reasonable observer would see them as susceptible to policy analysis," such as a Marine deciding to "toughen up" poolees by having them jump off a 20-foot-high cliff onto concrete. *Id.* In that hypothetical scenario, the decision could not in any reasonable way have been informed by policy considerations; it would represent a "complete rejection" of safety considerations in favor of "intensity concerns," "contrary to guidance from the Marines." *Id.* at 152-53.

Leaving aside that this dictum does not appear to have been adopted by the Third Circuit, plaintiffs here, as with the plaintiff in *Hajdusek*, have "not alleged anything close to the situation described above." *Id.* at 153. Here, the conduct consisted of communications between a

recruiter and his poolee comprised of a series of text messages and an unrecorded phone call that ends with Castner telling Tyler to let him know when he's getting on the road, which Tyler does. The specific conduct that is the focus is Castner's persistence in urging Tyler to get to the event even if all he does is show his face. This persistence is an exercise of judgment, made with the knowledge that Tyler is describing serious symptoms of illness and that he has chosen to drive while suffering from them; it is not a "rejection of a policy goal rather than a balancing of such goals." *Id.* at 153. Their communications are unambiguous: Castner, a recruiter dealing with a poolee, told Tyler why getting to the event was important and urged him to get there, even to the point of letting Tyler think that he risked discharge if he did not appear. That was a pure exercise of discretion on his part. As such, the Court must conclude what he said falls within the discretionary function exception.

\* \* \*

Finally, plaintiffs sued both the United States and the Secretary of the Navy, Carlos Del Toro, under the FTCA. But the only proper defendant under the FTCA is the United States. 28 U.S.C. §§ 2674, 2679(a); *see also CNA*, 535 F.3d at 138 n.2. The Court's disposition makes it unnecessary to address this issue beyond observing that it is an independent, additional reason why the case cannot proceed against Del Toro.

V.   **Conclusion**

For the reasons set forth above, the motion to dismiss will be granted, and the complaint will be dismissed for lack of subject matter jurisdiction. An appropriate order will follow.

s/ Katharine S. Hayden<br>Katharine S. Hayden, U.S.D.J.

Dated: March 31, 2023